## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

EDWARD E. CORN,                                          Case No. 1:15-cv-224

            Plaintiff,                                    Barrett, J.
                                                        Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.


## REPORT AND RECOMMENDATION

Plaintiff Edward Corn filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents two claims of error for this Court's review.  As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED, because it is NOT supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

In August 2012, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI").  Plaintiff alleges a disability onset date of February 2, 2012[1] based primarily upon mental impairments.  He is insured for purposes of DIB through December 31, 2016.

After Plaintiff's applications were denied initially and upon reconsideration, he requested an evidentiary hearing before an Administrative Law Judge ("ALJ").  On April

---

[1]Plaintiff initially indicated his disability onset date of 2/12/12, but later amended the date to 2/02/12.

22, 2014,[2] a hearing was held before ALJ Frederick Andreas.  (Tr. 54-97).  Plaintiff appeared in Columbus, Ohio along with counsel, and both Plaintiff and a vocational expert ("VE") testified by videoconference before ALJ Andreas, who presided from Cleveland, Ohio.  On May 20, 2014, ALJ Andreas issued a decision, concluding that Plaintiff was not disabled.  (Tr. 39-47).  The Appeals Council denied Plaintiff's request for review; therefore, the ALJ's decision remains as the final decision of the Commissioner.  Plaintiff filed the instant complaint in order to challenge the ALJ's decision.

Plaintiff was 37 years old at the time of the ALJ's decision, which is defined as a younger individual.  He has a ninth grade education and past relevant work as a cleaner/home restoration worker, as a collector, as a supervisor of credit and loan collection, as a skip tracer, as a warehouse worker, as a forklift operator or industrial truck operator, and as a warehouse supervisor.

The ALJ determined that Plaintiff has the following severe impairments:  "mood disorder NOS, bipolar disorder NOS, depression NOS, anxiety NOS, alcohol dependence, amphetamine abuse, cocaine related disorder NOS, and cannabis related disorder NOS." (Tr. 42).  However, the ALJ determined that none of Plaintiff's psychological impairments, either alone or in combination, met or medically equaled Listings 12.05 or 12.06 in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability.  (Tr. 43-44).  Instead, the ALJ determined that Plaintiff still retained the residual functional capacity ("RFC") to perform a full range

---

[2]Plaintiff initially appeared at a hearing scheduled for December 5, 2013 with his case manager, but that hearing was continued so that Pliantiff could obtain legal representation.

2

of work at all exertional levels with only the following non-exertional limitations relating to his mental impairments:

> The claimant is limited to tasks with low production goals or low production quotas, he is limited to superficial and occasional interaction with coworkers and supervisors and can only perform work without contact with the general public, and he is limited to a setting where changes are infrequent or easily explained – meaning routine duties or work.

(Tr. 44). Based on the testimony of the vocational expert, the ALJ determined that although Plaintiff could not return to most of his past work, he still could perform past relevant work as a cleaner/home restoration and warehouse worker. (Tr. 46). Therefore, the ALJ concluded that Plaintiff is not under a disability.

In his Statement of Errors, Plaintiff argues that the ALJ erred: (1) by finding that Plaintiff's bipolar disorder did not meet or medically equal Listing 12.04(C); and (2) by finding that Claimant could perform past relevant work.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits

4

must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job.  42 U.S.C. § 423(d)(1)(A).

**B.  Specific Errors**

**1.  Listing 12.04(C)**

The Listing of Impairments is a set of impairments considered to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  *Rabbers v. Com'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009)(internal quotation marks and citation omitted).  If a Plaintiff satisfies a Listing at Step 3 of the sequential analysis, he or she is entitled to conclusive presumption of disability.  However, the Plaintiff bears the burden of proving that he meets or equals all of the criteria of a listed impairment.  *See Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).

Here, Plaintiff argues that the ALJ erred by failing to properly evaluate whether the Plaintiff's bipolar disorder meets or functionally equals the criteria set forth in Part C of Listing 12.04.  In order to meet or equal Listing 12.04, Plaintiff was required to show either the requirements of both Parts A and B, or alternatively, that he satisfied the requirements in Part C.  In this case, in determining that Plaintiff did not meet or equal Listing 12.04 in full, the ALJ focused on findings that Plaintiff did not meet the "paragraph B functional criteria," meaning he did not have at least two "marked" restrictions in functional areas, or one marked restriction plus repeated episodes of decompensation of extended duration.  (Tr. 42).  Based upon the evidence, the ALJ determined that Plaintiff had no marked restrictions in any area.  Instead, the ALJ found

5

Plaintiff has only mild restriction in his activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence or pace.

Plaintiff does not contest any of the ALJ's findings with respect to the Paragraph B criteria.  Rather, Plaintiff argues that the ALJ erred by failing to properly evaluate Part C of Listing 12.04.  The ALJ's analysis of that portion of the Listing is as follows:

> The paragraph C criteria for Listing 12.04 is not satisfied because the claimant does not have a medically documented history of a chronic organic mental disorder of at least two years' duration that has caused more than minimal limitation of ability to do basic work activities with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:  1) repeated episodes of decompensation, each of extended duration; or 2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.
>
> In addition, Listing 12.05 paragraph C criteria is not satisfied because the claimant's mental impairment has not resulted in a complete inability to function independently outside the area of one's home.

(Tr. 43).

Plaintiff complains that the ALJ's analysis does not apply "any of the facts of this case" to the listed criteria.  Instead, Plaintiff argues that the ALJ's analysis merely repeats the regulatory criteria and summarily concludes that those criteria have not been satisfied.  Plaintiff argues persuasively that the evidence confirms that he has suffered from chronic affective disorder that has been present in a severe manner for more than two years, thereby satisfying the first portion of Paragraph C. The Commissioner does not dispute that Plaintiff satisfies that initial portion of Paragraph C.

Plaintiff additionally argued in his prehearing brief to the ALJ, and argues before this Court, that the evidence in the record demonstrates his "inability to function outside

6

a highly supportive living arrangement, with an indication of continued need for such an arrangement" sufficient to satisfy Sentence 3 of Paragraph C.  The Commissioner urges this Court to affirm the ALJ's finding that Plaintiff did not satisfy Sentence 3, despite the lack of any written analysis.

The Defendant argues that the ALJ was not required to provide any greater explanation than he did, because substantial evidence in the record as a whole supports the ALJ's conclusion that Plaintiff did not satisfy the Listing.  To the extent that this Court can find "some evidence" in the record to support the ALJ's conclusion, the Defendant urges this Court to affirm the ALJ's conclusion as within the "zone of choice."

However, I recommend remand because I cannot find the existence of "substantial evidence" to support the ALJ's determination on the record presented, due to the ALJ's lack of relevant analysis of the Listing 12.04(C) issue.  Despite the ALJ's formulaic recitation that "[t]he paragraph C criteria for Listing 12.04 is not satisfied because the claimant does not have a medically documented history of a chronic organic mental disorder of at least two years' duration that has caused more than minimal limitation of ability to do basic work activities with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following [three criteria]," there is no dispute that Plaintiff does in fact satisfy the "chronic organic mental disorder" portion of Listing 12.04(C).  Thus, the only question is whether he has demonstrated an inability to function outside of a "highly supportive living environment." While it is true that the Sixth Circuit does not require extensive articulation at Step 3 of the sequential analysis, here, Plaintiff pointed to specific evidence that he met or equaled Listing 12.04(C) based upon the referenced "highly supportive living environment" criteria.  Because the undersigned cannot determine whether the ALJ

7

considered Plaintiff's argument and rejected it for valid reasons, or simply failed to review the argument, remand is required.  *See generally M.G. v. Com'r of Soc. Sec.*, 861 F. Supp.2d 846 (E.D. Mich. 2012).

Plaintiff has lived with his mother since 2012, and currently lives with his aunt. Both his mother and his aunt keep close watch over him, checking on him daily.  (Tr. 42-43).  As the ALJ noted, Plaintiff can prepare his own meals in the microwave and cuts the grass, but his mother reminds him to care for his personal needs and can shop only with assistance.   Both his mother and his aunt provided written statements to the ALJ, although the ALJ gave them "little weight."  (Tr. 46, citing Tr. 387-388).  Plaintiff also has a case manager.  Plaintiff was psychiatrically hospitalized from February 2, 2012 through February 7, 2012, and again from March 5, 2012 through March 8, 2012. In between those two hospitalizations, Plaintiff spent nearly three weeks in a partial hospital program.  He attempted to return to work in July 2013, but he quit working after two days due to an increase in his psychiatric symptoms.

The Commissioner points to the uncontested finding that Plaintiff had only "mild limitations in activities of daily living [ADLs]," under Paragraph B of Listing 12.04, arguing that the referenced Paragraph B finding is "entirely incongruent with" the separate criteria of Sentence 3 of Paragraph C – the "inability to function outside a highly supportive living arrangement."  (Doc. 13 at 9).  But the undersigned cannot agree that a mild restriction in ADLs underlinenecessarily proves that Plaintiff can function outside a highly supportive living arrangement.  Many individuals with long-standing mental or psychological impairments that are otherwise work-preclusive may demonstrate only mild limitations in ADLs precisely *because* they reside in a highly supportive living arrangement.  In light of the referenced evidence, remand for further

consideration of Listing 12.04(C) is recommended. *Accord Puckett v. Com'r of Soc. Sec.*, 2011 WL 4358368 (S.D.. Ohio, Aug. 11, 2011) (remanding for further proceedings to determine whether plaintiff met paragraph "C" criteria).

### 2.  Ability to Perform Past Relevant Work

Plaintiff additionally argues that the ALJ erred in determining that he can perform past relevant work as a home restoration service crew member.  The vocational expert initially classified Plaintiff's past relevant work as being that of a cleaner in a home restoration service.  (Tr. 80).  However, on cross-examination, the vocational expert agreed with Plaintiff's counsel that the Plaintiff's description of his job was that of a crew leader.  Plaintiff interrupted to further clarify that he "was actually part of the crew...I just had the title and [was] doing the paperwork, but I was actually the one that was doing the crew - - or the actually [sic] work myself."  (Tr. 91).  The VE then testified that an individual with the Plaintiff's restrictions would not be able to perform the position of crew <u>leader</u> because it would require interaction with the general public, but that Plaintiff "could be [on] the crew."  (Tr. 90-91).

The regulatory framework for evaluating past relevant work permits an ALJ to consider whether a plaintiff can perform that work either as that work was actually performed or as it is generally performed in the national economy, see 20 C.F.R. §404.156(b)(2).  Here, the ALJ described the VE's testimony by stating that Plaintiff "has past relevant work as a cleaner/home restoration, DOT 389.664-010, which is heavy semi-skilled work...as generally performed, but the claimant performed it as very heavy."  (Tr. 46-47).  The ALJ stated that the VE "testified that the claimant could perform his past relevant work as a cleaner/home restoration. [sic].  She stated that he

could not perform it as he performed it as a crew leader but that he would be able to perform it as a member of the crew."  (Tr. 47).

The undersigned concludes that substantial evidence (including Plaintiff's own testimony) supports the ALJ's determination that Plaintiff performed past relevant work as a member of a cleaner/home restoration crew, even though at the time he performed such work he had additional "crew leader" duties that he can no longer perform.  In addition and in the alternative, any error is harmless because Plaintiff does not dispute the ALJ's finding that Plaintiff remains capable of performing past relevant work as a warehouse worker.

### III.  Conclusion and Recommendation

In *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 173 (6th Cir. 1994), the Sixth Circuit set forth "what a district court should do once a determination is made that an ALJ erroneously applied the regulation and the Secretary's denial of benefits therefore must be reversed."  *Faucher* explained that a trial court "can reverse the decision and immediately award benefits *only* if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Id.* at 176 (emphasis added).

This is not a case in which all factual issues have been resolved. The ALJ found Plaintiff to be "less than credible" with a long history of polysubstance abuse – findings that are not in dispute in this appeal, and that may have some bearing on the analysis of whether Plaintiff can function outside a highly supportive living arrangement.  For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **REVERSED AND REMANDED** under sentence four, for further development of the record consistent with this report and recommendation, and that this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

EDWARD E. CORN,                                    Case No. 1:15-cv-224

                    Plaintiff,                     Barrett, J.
                                                   Bowman, M.J.
            v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.


**NOTICE**

        Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).